**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric M. Johnston, | No. CV-21-00945-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). The Court now affirms the Administrative Law Judge's ("ALJ") unfavorable decision.

**I.     THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *E.g.*, 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the Plaintiff is engaged in such work, he is not disabled. *Id*. If he is not, the analysis proceeds. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If the Plaintiff does not, he is not disabled. *Id*. If he does, the analysis proceeds to step three.

*Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is capable of performing his past relevant work. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. *Id*. If he cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on his RFC, age, education, and work experience. § 404.1520(a)(4)(v). If the claimant cannot, he is disabled. *Id.*

This Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up). In determining whether substantial evidence supports a decision, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quotations and citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## II. PROCEDURAL HISTORY

Plaintiff filed an application for Title II disability benefits on December 29, 2017 alleging disability beginning June 27, 2017. (AR. at 209-212.) Plaintiff alleged disability resulting from a spinal injury, back surgery, arthritis, diabetes, and narcolepsy. (AR. at 231.) The agency denied Plaintiff's claim at the initial and reconsideration phases of administrative review (AR. at 126-29, 135-38), and Plaintiff timely requested a hearing before an ALJ (AR. at 139-40). ALJ Patricia A. Bucci conducted a telephonic hearing on

June 16, 2020 at which Plaintiff and vocational expert ("VE") Joy Yoshioka testified. (AR. at 41-77.) ALJ Bucci then issued an unfavorable decision on August 21, 2020. (AR. at 17-38.) Plaintiff appealed (AR. at 331-37), and the Social Security Appeals Council denied review in a letter dated April 5, 2021 (AR. at 1-6). Plaintiff then filed the complaint initiating this civil action on June 1, 2021. (Doc. 1.)

In the unfavorable decision, the ALJ found Plaintiff had not engaged in disqualifying substantial, gainful work activity, and that he suffered from medically-determinable, severe impairments including non-ischemic cardiomyopathy, diabetes, "multilevel degenerative disc disease with stenosis status-post lumbar fusion," narcolepsy, obstructive sleep apnea, and bilateral carpal tunnel syndrome. (AR. at 19-22.) The ALJ found Plaintiff's impairments did not meet and were not medically equivalent to any listed impairment at step three, and that Plaintiff retained the ability to perform "a range of limited light work," including the ability to stand or walk for four of eight working hours, the ability to lift up to 20 pounds occasionally, and to frequently handle and finger with both hands.[1] (AR. at 22-23.)

The ALJ rejected Plaintiff's symptom testimony because the objective evidence did not support the severity of the symptoms Plaintiff alleged, and that Plaintiff's symptoms were managed by or improved with treatment. (AR. at 25-29.) Further, the ALJ was not persuaded by the opinions of Plaintiff's treating physicians and instead adopted the less restrictive opinions expressed in the prior administrative medical findings at an earlier level of administrative review. (AR. at 29-31.) The ALJ concluded Plaintiff could perform his own past relevant work at step four, and thus, was not disabled. (AR. at 31.)

### III. DISCUSSION

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by improperly rejecting the opinions of Plaintiff's treating physicians; (2) whether the ALJ erred by improperly rejecting Plaintiff's symptom testimony; (3) whether the ALJ erred by rejecting the opinion of a lay witness without citing sufficient reasons; and (4) whether the ALJ erred

---

[1] The ALJ's RFC included several other postural and environmental limitations. (AR. at 23.)

by relying upon incomplete testimony from the vocational expert. (Pl. Br. at 1-2.) The Court finds no error and so affirms the decision of the ALJ.

**A.     The medical opinions**

Under regulations pertaining to the evaluation of medical opinion evidence for disability claims filed on or after March 27, 2017, the ALJ will not defer to a medical opinion based upon the existence of a treating or examining relationship. 20 C.F.R. § 404.1520c(a). Instead, when evaluating a physician's opinion, the ALJ must only articulate how she considered two factors: supportability and consistency. § 404.1520c(b)(2). Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . .will be." § 404.1520c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 404.1520c(c)(2). While the ALJ must also consider other factors, such as the existence of a treating or examining relationship and the frequency with which a provider examined the claimant or administered treatment, the ALJ is not required to explain how she considered those factors unless he "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same . . . ." §§ 404.1520c(b)(3), (c). In *Woods v. Kijakazi*, the Ninth Circuit held that for cases to which the new regulations apply, ALJs are no longer required to cite "clear and convincing" or "specific and legitimate" reasons for rejecting a treating or examining physician's opinion. 32 F.4th 785, 787, 792 (9th Cir. 2022). Instead, ALJs must now articulate how persuasive each medical opinion is using the supportability and consistency factors, and their explanations must be supported by substantial evidence. *Id*.

Plaintiff argues—citing "long-standing Ninth Circuit precedent"—that the ALJ did not cite the requisite specific, legitimate reasons for discrediting the opinions of his providers, including his pulmonologist, Dr. Stephen Anthony; his cardiologist, Dr. Lorne

Murray; and his treating family physician, Dr. Martin Feldman. (Pl. Br. at 7-17.) Plaintiff's written arguments in this case pre-date *Woods*. As such, the appropriate inquiry is whether the ALJ addressed the regulatory factors and provided an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792.

### Dr. Anthony

Dr. Anthony submitted three assessments in support of Plaintiff's disability claim. (AR. at 282-83, 616-26, 1024-25.) On June 18, 2018, he completed a Sleep Disorders Residual Functional Capacity Questionnaire, stating Plaintiff experiences recurrent daytime sleep attacks once or twice per day which last anywhere from ten minutes to one hour. (AR. at 616.) When prompted to identify objective testing results or clinical findings which would support these conclusions, Dr. Anthony cited polysomnography results. (AR. at 617.) He estimated Plaintiff would need four or five breaks during the average workday. (AR. at 618.) Approximately nine months later, on March 2, 2019, Dr. Anthony completed a long-term disability statement for Plaintiff's employer. (AR. at 282-83.) He opined in that statement that Plaintiff could sit less than two hours, stand less than one hour, and walk less than one hour in an eight-hour day. (AR. at 283.) He opined Plaintiff can work zero hours per day. (AR. at 283.) Three months later, on June 6, 2019, Dr. Anthony completed another Attending Physician's Statement of Disability documenting Plaintiff's reported symptoms of daytime hypersomnolence, difficulties with concentration and focus, and the need for periodic naps. (AR. at 1024-25.) He listed Plaintiff's diagnoses as obstructive sleep apnea and narcolepsy, indicated that Plaintiff's condition had not improved, opined that he was totally disabled from his regular occupation or any occupation, and opined that Plaintiff was never expected to resume full-time employment.[2] (AR. at 1024.)

In the decision, the ALJ found Dr. Anthony's opinions not persuasive. (AR. at 30.) To begin, the ALJ declined to address Dr. Anthony's conclusion Plaintiff is "totally disabled," as an opinion on the dispositive issue of disability, "which is reserved to the

---

[2] In a concurrent assessment of Plaintiff's physical limitations, Dr. Anthony omitted any specific physical limitations, noting they were "not in [his] field of specialty—physical." (AR. at 1025.)

- 5 -

Commissioner, [ ] is inherently neither valuable nor persuasive" under the regulations. (AR. at 30.) Beyond the conclusion Plaintiff is "disabled," the ALJ described Dr. Anthony's opinion as "essentially a checkbox form [which] endorsed the most significant limits in many areas without citation to objective evidence and without support in treatment notes." (AR. at 30.) The ALJ concluded Dr. Anthony's "opinion was not supported with facts pertaining to [Plaintiff's] physical impairments and symptoms cited within the assessment." (AR. at 30.) The ALJ also found Dr. Anthony's opinion not consistent with the overall record, which did not support the frequency of Plaintiff's narcoleptic episodes. (AR. at 30.)

The ALJ cited adequate reasons supported by substantial evidence to reject Dr. Anthony's opinions. Dr. Anthony endorsed significant physical limitations, including Plaintiff's diminished ability to stand and walk, without citations to record evidence. (AR. at 283, 617.) Such opinions are, thus, not supportable. § 404.1520c(c)(1). As the ALJ noted, Dr. Anthony's own treatment notes, which span the record (AR. at 471-92, 1083-1125), do not support the disabling physical limitations he assigned or the frequency of Plaintiff's narcoleptic episodes. During the relevant period, Dr. Anthony's treatment records scarcely mention any such physical difficulties or the existence of daily, recurring episodes.[3] These facts go to the consistency of Dr. Anthony's opinions with the record. § 404.1520c(c)(2).

Plaintiff argues that Dr. Anthony later clarified, in a letter submitted for the first time to the Appeals Council, that Plaintiff's disease is "not characterized by 'attacks'," but rather a constant state of fluctuating daytime sleepiness. (Pl. Br. at 11, citing AR. at 13.)

---

[3] In September 2017, Dr. Anthony documented Plaintiff's "narcolepsy was difficult for him at work[ ]prior to [his back] surgeries." (AR. at 1105.) During a follow-up visit in January 2018, however, Plaintiff was "benefiting from the use of CPAP therapy . . . ." (AR. at 1104.) During a March 2018 visit, Dr. Anthony indicated that Plaintiff's narcolepsy and hypersomnolence contributed to his disability, but that Plaintiff was not taking his prescribed stimulants. (AR. at 1097.) At his March 2019 visit, Plaintiff was instructed to remain on CPAP therapy, as he was "benefitting greatly from its use." (AR. at 1095.) In June 2019, Dr. Anthony indicated that "[d]aytime hypersomnolence occurs" and that Plaintiff's CPAP machine was malfunctioning. (AR. at 1088.) His September 2019 visit includes no reference to daily recurring episodes related to narcolepsy. (AR. at 1085-87.) In March 2020, Plaintiff reported using his CPAP only intermittently. (AR. at 1122.)

Plaintiff notes Dr. Anthony explained the extent of Plaintiff's sleepiness is "patient subjective" and could not be objectively measured. (AR. at 13.) But these statements create a conflict with Dr. Anthony's prior conclusions and only serve to substantiate his reliance upon Plaintiff's subjective report. As such, the ALJ cited reasons supported by substantial evidence for finding Dr. Anthony's opinions not persuasive.

**Dr. Murray**

On July 1, 2019, Plaintiff's cardiologist, Dr. Lorne Murray, completed an Attending Physician's Statement of Disability, documenting that Plaintiff's nonischemic cardiomyopathy was supported by a cardiac ultrasound showing a diminished ejection fraction. (AR. at 1026-29.) Dr. Murray opined Plaintiff could sit for one hour at a time and for eight hours in a day. (AR. at 1028.) Regarding his ability to stand and walk, Dr. Murray wrote, "N/A." (AR. at 1028.) Dr. Murray explained, "[Plaintiff] has a severe cardiomyopathy [and] cardiac function has not improved despite optimal medical therapy." (AR. at 1027.) He noted Plaintiff's symptoms could include shortness of breath, "physical intolerance," and "easy fatigue," and that his symptoms "are not expected to improve." (AR. at 1027.)

As with Dr. Anthony's opinion, the ALJ declined to address Dr. Murray's conclusion that Plaintiff was disabled, as such evidence is inherently unpersuasive under the regulations. (AR. at 30.) Addressing the specific limitations Dr. Murray assigned, however, the ALJ rejected the opinion by noting it "was essentially a checkbox form" which "endorsed the most significant limits in many areas without citation to objective evidence and without support in treatment notes." (AR. at 30.) The ALJ also found Dr. Murray's opinion not consistent with the record, citing over a dozen examples of normal physical, cardiovascular, and respiratory findings from Plaintiff's treatment notes. (AR. at 30.)

This Court finds the ALJ cited reasons supported by substantial evidence for finding Dr. Murray's opinion unpersuasive. The ALJ cited normal cardiac and respiratory examinations which establishes the inconsistency of Dr. Murray's opinion with the medical

record. (AR. at 1050, 1272, 1319, 1735.) Plaintiff argues the ALJ "provided no further explanation for how [the cited] records allegedly did not support Dr. Murray['s ]opinions regarding [Plaintiff's] functional limitations and that the ALJ "cherry-picked" evidence supporting her conclusions from these notes. (Pl. Br. at 17.) But the purpose of the ALJ's record citations is clear: to illustrate that Plaintiff "often had normal physical, cardiovascular, and respiratory finding[s]" which are inconsistent with the disabling limitations Dr. Murray assigned. (AR. at 30.) The treatment notes the ALJ cited reflect normal gait or ambulation (AR. at 403, 822), full strength in most muscle groups (AR. at 403, 407-08, 417, 1050), and normal respiratory and cardiac examinations (AR. at 1050, 1272, 1582, 1735). Elsewhere in the decision, as explained in further detail below, the ALJ cited substantial evidence of significant cardiac improvement after Plaintiff's implantable cardioverter-defibrillator ("ICD") device was implanted. (AR. at 27.) While the ALJ may not cherry-pick evidence to support a given conclusion, *see Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001), substantial evidence need not amount to a preponderance of the evidence. *Orn*, 495 F.3d at 630. The ALJ's conclusion that Dr. Murray's assigned limitations are inconsistent with the record constitutes a rational interpretation of that record. *Thomas*, 278 F.3d at 954; *see Moncada v. Chater*, 60 F.3d 521, 524-25 (9th Cir. 1995) (noting that the Court is not the trier-of-fact, and reasoning that "[w]e do not retry the case or alter credibility determinations and factual findings where the evidence is susceptible of more than one rational interpretation.") (citations omitted).

**Dr. Feldman**

On July 1, 2019, Dr. Martin Feldman, Plaintiff's treating family doctor, completed an Attending Physician's Statement of Disability indicating Plaintiff was totally disabled from his own occupation and other occupations. (AR. at 1022.) He opined Plaintiff could stand less than one hour at a time, sit for one hour, and walk less than one block with a cane. (AR. at 1023.) He noted Plaintiff's maximum lifting, carrying, pushing, or pulling capacity was one-to-ten pounds. (AR. at 1023.)

As with Dr. Anthony and Dr. Murray, the ALJ declined to address Dr. Feldman's conclusion that Plaintiff was disabled, the ALJ also rejected the remainder of Dr. Feldman's assessment as consisting of "essentially a checkbox form," which "endorsed the most significant limits . . . without citation to objective evidence and without support in treatment notes." (AR. at 30.) The ALJ cited the same "normal physical, cardiovascular, and respiratory finding[s]" illustrating an inconsistency between the record evidence and Dr. Feldman's assigned limitations. (AR. at 30.) For the reasons already explained, the Court finds the ALJ's consistency finding is supported by substantial evidence. As such, the ALJ did not err with respect to Dr. Feldman.

**B.     Plaintiff's testimony**

To properly evaluate a Plaintiff's symptom testimony, the ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted). Once the ALJ establishes the claimant has met the first step, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (internal quotations and citations omitted). To that effect, "the ALJ may consider, among other factors, ordinary techniques of credibility evaluation, inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and the claimant's daily activities." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (quotations and citations omitted).

After summarizing Plaintiff's prior written statements and hearing testimony, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained . . . ." (AR. at 25.) The ALJ first concluded the record evidence was "not consistent with the alleged severity of [Plaintiff's] pain and symptoms." (AR. at 25.) The ALJ also noted inconsistencies in the record, such

as Plaintiff's reported ability to play games and text using a smartphone, despite his testimony that he experienced numbness in his hands that caused him to drop objects or have difficulty holding them, and testimony that Plaintiff could still drive despite his narcolepsy, and that he even denied episodes of tiredness while driving. (AR. at 24-25.) The ALJ also found that several of Plaintiff's medical conditions "responded well to treatment" or generally improved. (AR. at 28.)

The ALJ cited clear, convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. Among the reasons sufficient to discredit a Plaintiff's symptom testimony are inconsistent statements, *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded by regulations on other grounds), and evidence of improvement in the Plaintiff's overall medical condition, *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, the ALJ cited both, and both reasons are supported.

Regarding the Plaintiff's improvement, the ALJ reasoned that, "[w]hile there is evidence [Plaintiff] presented with abnormal physical findings, these symptoms responded well to treatment." (AR. at 28.) In December 2019, Plaintiff reported to his treating pain management provider that "his medications provide adequate relief and allow[] him to maintain his functional status and quality of life." (AR. at 1529.) Records from January, February, and March 2020, reflect that Plaintiff experienced 80% ongoing relief from a June 2019 epidural injection. (AR. at 1192, 1512, 1521, 1526.) In February and March 2020, Plaintiff reported to his treating pain management provider that he experienced 25% relief from a prior procedure. (AR. at 1511, 1516, 1520.) He also reported to providers that his medications provided 30% improvement in his overall quality of life, "increased mobility[,] and ability to perform [activities of daily living.]" (AR. at 1521, 1526.) Records cited by the ALJ also show Plaintiff reported improvement in his neuropathy by taking Lyrica. (AR. at 405, 507, 1715.)

As to Plaintiff's cardiac condition, the ALJ noted echocardiogram results revealed improvement to 40-50% in Plaintiff's ejection fraction after the implantation of his ICD

device. (AR. at 27, citing 1247, 1670, 1689.) In Plaintiff's recent cardiovascular treatment records from October 2019 and March 2020, Dr. Murray indicated Plaintiff's "prior severe" cardiac impairment "has now improved." (AR. at 1248, 1252.) At his hearing, when the ALJ asked Plaintiff whether he continued to experience issues with his cardiomyopathy, Plaintiff responded he did not notice ongoing issues. (AR. at 51.) The ALJ also found that Plaintiff's carpal tunnel symptoms "responded well to treatment," citing a January 2020 treatment record indicating Plaintiff reported "about 75% relief" for several months after his providers administered an injection to his right thumb, and recent neurology records indicating Plaintiff's wrist splints were helping his carpal tunnel symptoms. (AR. at 28, citing 1535, 1715.) The Plaintiff so reported in other neurological visits. (AR. at 1719, 1723.)[4]

Substantial evidence also supports the specific inconsistencies the ALJ cited in the record, such as the Plaintiff's ability to drive despite his narcolepsy. (AR. at 24.) Of note, the ALJ cited Plaintiff's August 2019 treatment visit with Dr. Feldman indicating Plaintiff "denie[d] any episodes of tiredness associated with driving[,]" (AR. at 24, citing AR. at 1062), although Plaintiff alleged he falls asleep during the day, and sometimes has to pull over while driving because of sleepiness. (AR. at 52, 55.) Plaintiff alleges that this same condition, which did not completely preclude his ability to drive, still interfered with his work activity. (AR. at 24, 55.) As the ALJ later pointed out, however, Plaintiff "often denied being fatigued." (AR. at 28, citing AR. at 406, 411, 416, 640, 646.) Plaintiff also testified he could use a smartphone for basic functions (AR. at 54), but also that the progressively worsening numbness in his hands causes him to drop objects (AR. at 63). Substantial evidence supports the ALJ's clear, convincing reasons for discrediting

---

[4] While substantial evidence supports the ALJ's conclusion that Plaintiff exhibited improvement or "responded well to treatment" (AR. at 27-28), the Court also acknowledges that Plaintiff continued to report ongoing symptoms and exhibit clinical findings despite this improvement. (AR. at 1511, 1516, 1520-21, 1526.) Still, the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). As long as substantial evidence, *i.e.*, more than a scintilla of evidence, supports the ALJ's resolution of those conflicts, and there is no other legal error, this Court will not disturb the ALJ's findings. *Id.* at 1154.

Plaintiff's symptom testimony.[5]

### C. The lay witness statement

The "ALJ need not separately evaluate statements from lay witnesses that mirror statements or testimony that the ALJ has already properly rejected." (*Molina,* 674 F.3d at 1122.) Thus, the ALJ's failure to cite germane reasons for rejecting this third-party statement is harmless under *Molina*. Here, the third-party statement substantively overlaps with Plaintiff's own testimony,[6] and the ALJ's clear, convincing reasons for rejecting that testimony apply equally to the third-party statement. Consequently, under *Molina*, any such error is harmless.[7]

**IT IS THEREFORE ORDERED** affirming the August 21, 2020 decision of the Administrative Law Judge (AR. at 17-38).

/ / /

---

[5] The Court acknowledges the ALJ cited other reasons for discrediting Plaintiff's symptom testimony, including that the evidence did not fully support the severity of Plaintiff's alleged symptoms (AR. at 25), that Plaintiff's need for an ambulatory assistive device throughout the relevant period was questionable (AR. at 26), and that the record does not support Plaintiff's allegations concerning medication side effects. (AR. at 29.) As explained above, considering that the ALJ has identified other clear, convincing reasons for discrediting Plaintiff's symptom testimony, any error with respect to the remaining reasons would be harmless. *Cf. Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding an unconvincing reason was harmless considering several other clear, convincing reasons the ALJ cited to reject the claimant's testimony).

[6] In his statement, the third-party described Plaintiff's daily activities as consisting of watching television, taking his medications, sleeping, and spending time with his son. (AR. at 263-64.) The third-party noted that Plaintiff gets along well with others and responds to authority, but "gets frustrated" due to his narcolepsy. (AR. at 264.) He noted Plaintiff drives, reads, and bathes daily; cooks, cleans his house, shops, "fixes things," and plays card games weekly; and that he does yardwork, watches television, attends sporting activities, visits friends, and goes out monthly. (AR. at 266.) He noted Plaintiff has trouble completing tasks and "has a hard time getting around." (AR. at 270.) These statements are consistent with the Plaintiff's own report, and specifically his account of how his symptoms impact an average day. (AR. at 274.) Plaintiff offered no reply to Defendant's contention that the third-party's statements largely overlapped with Plaintiff's testimony. (Def. Br. at 19-20, Reply at 10.)

[7] Plaintiff also argued that the ALJ erred by omitting from her hypothetical questions to the vocational expert "[Plaintiff's] credible allegations, the limitations described by the lay witness, and the limitations assessed by three of [Plaintiff's] treating doctors." (Pl. Br. at 22-23.) As explained above, however, this Court finds the ALJ did not err with respect to any of those evidentiary categories. Consequently, this Court need not address Plaintiff's final issue that the hypothetical questions did not encompass all of Plaintiff's limitations supported by the record.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and to close this case.

Dated this 23rd day of March, 2023.

_____
G. Murray Snow
Chief United States District Judge